FILED

JUN 02 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff**<br><br>**v**<br><br>**(1) BHAVESH KUMAR THAKKAR**<br>**(2) RAKESH BAROT**<br>**Defendants** | **CRIMINAL NO. 1:25-CR-258-RP**<br><br>**SUPERSEDING INDICTMENT**<br><br>**[Ct. 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;**<br>**Ct. 2: 18 U.S.C. § 1956 – Conspiracy to Commit Money Laundering]**<br><br>**Notice of Government's Demand for Forfeiture** |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

1. Beginning in at least September 2022, and continuing until on or about September 17, 2025, in the Western District of Texas and elsewhere, Defendants **BHAVESH KUMAR THAKKAR** and **RAKESH BAROT**, together with others known and unknown to the grand jury, including but not limited to **KISHAN RAJESHKUMAR PATEL** and **DHRUV RAJESHBHAI MANGUKIYA,** knowingly and intentionally participated in a scheme to defraud, and attempted to defraud, one or more elderly persons out of hundreds of thousands of dollars of property. **THAKKAR, BAROT, PATEL,** and **MANGUKIYA** also knowingly and intentionally engaged in a conspiracy to launder the proceeds of that scheme.

2. On more than one occasion, and at **THAKKAR** and other coconspirators' direction and coordination, **PATEL** and **MANGUKIYA** received cash and gold from the victims of the fraud scheme, conveyed a portion of the proceeds to their coconspirators, and

kept a percentage of the proceeds for their own benefit. On at least two occasions, **BAROT** received large amounts of gold and/or cash from **PATEL** that **PATEL** had received from victims of the fraud scheme.

**TRUSTED GOVERNMENT OFFICIAL FRAUD**

3. The scheme perpetrated by **THAKKAR, BAROT, PATEL, MANGUKIYA,** and their coconspirators follows the same general plan. Members of the conspiracy, who are located in foreign countries and across the United States, identify vulnerable individuals, often elderly, through various online phishing methods, for example falsely notifying the target victim of a possible fraudulent charge on a credit card or other type of account. A member of the conspiracy then contacts the target victim by phone and falsely claims to be a real government official or private sector employee. In this case, members of the conspiracy claimed to be officials with the United States Treasury Department, FTC, other government agencies, and employees of private banks and online payment systems. The fake government official or private sector employee will then claim the target victim is under investigation or at risk of some financial loss and, in order to resolve the investigation or prevent the loss, the target victim needs to deposit cash, gold, or some other item of financial value with the fake government official or private sector employee for safekeeping while the issue is resolved. The victim is given specific instructions for obtaining the cash, gold, or other item of financial value and how to package the valuable item for delivery to the fake government official or private sector employee. Victims are often instructed to purchase gold or other valuable items from the internet or instructed to make cash withdrawals from their bank accounts.

4. Once the victim has obtained the valuable item or cash, the fake government official or private sector employee then informs the victim that the package containing the valuable item or cash will be received by another member of the conspiracy, often referred to

as a courier. Sometimes the courier comes to the victim's home to pick up the package and sometimes they meet in the parking lot of a local business like a Target or Walmart. Members of the conspiracy often recruit couriers in other parts of the country to pick up fraud funds on behalf of the conspiracy.

5. The couriers are essential to completing the fraud. They coordinate with other members of the conspiracy by phone or the internet and are given instructions about the pickup. Once the pickup has occurred, they communicate receipt of the package and its contents to other members of the conspiracy by phone and the internet and then deliver the same to other members of the conspiracy by various means. Depending on the type of valuable property that is obtained from the victim, the courier may be paid by a member of the conspiracy via an online payment system like Zelle, Venmo, or PayPal or they may simply keep a certain percentage of the valuable property or cash. The coconspirators who receive the fraud proceeds from the couriers, like **BAROT**, are similarly paid for their role in the conspiracy.

6. Victims will often make multiple deliveries to the conspiracy and lose hundreds of thousands of dollars.

7. VICTIM 1 was an elderly man living in Granite Shoals, Texas, which is in the Western District of Texas. At the direction of members of the conspiracy, VICTIM 1 made three cash deliveries to couriers in August 2024. VICTIM 1 identified **PATEL** as the courier for a delivery of $50,000. After the third delivery, VICTIM 1 realized he was being scammed and made a report to local police. With the help of local police, VICTIM 1 agreed to make a fourth delivery of $130,000. **PATEL** was again the courier who showed up to receive the $130,000, and he was arrested by police after receiving what he thought was the cash. VICTIM 1 was defrauded out of approximately $180,000.

8. VICTIM 2 was an elderly woman living in Fort Worth, Texas. At the direction of members of the conspiracy, VICTIM 2 withdrew approximately $30,000 from her bank account and delivered it to a courier, **PATEL**.

9. VICTIM 3 was an elderly man living in The Hills, Texas. At the direction of members of the conspiracy, VICTIM 3 made one cash delivery and two gold deliveries to couriers in August 2024. On or about August 13, 2024, **PATEL** served as the courier for one of the deliveries from VICTIM 3. **PATEL** met VICTIM 3 in a Randall's parking lot and received a box from VICTIM 3 that contained 18 one-ounce gold coins, which together were worth approximately $50,000. After receiving the gold coins, **PATEL** traveled to Houston, Texas, and delivered the coins to **BAROT** in a Kroger parking lot near **BAROT**'s residence. Evidence shows that **THAKKAR** was involved in coordinating the handoff of the gold coins from **PATEL** to **BAROT**. In total, VICTIM 3 was defrauded out of approximately $133,000.

10. VICTIM 4 was an elderly woman living in Yorktown, Texas, which is in the Southern District of Texas. At the direction of members of the conspiracy, VICTIM 4 made cash and gold deliveries to one or more couriers in 2024. On or about August 16, 2024, **PATEL** served as the courier for one of the deliveries from VICTIM 4. **PATEL** received a box from VICTIM 4 that contained 7 one-kilogram gold bars, which together were worth approximately $560,000. After receiving the gold bars, **PATEL** traveled to Houston, Texas, and delivered five of the gold bars, worth approximately $400,000, to **BAROT** in a Kroger parking lot near **BAROT**'s residence. Evidence shows that **THAKKAR** was involved in coordinating the handoff of the gold bars from **PATEL** to **BAROT**. In total, VICTIM 4 was defrauded out of approximately $752,000.

## ROLES IN THE CONSPIRACY

11. **THAKKAR** served as a coordinator, receiver, and money launderer for the

conspiracy. He coordinated with members of the conspiracy to transfer and receive the proceeds of the fraud scheme from the couriers who received the proceeds from the victims to other members of the conspiracy and laundered those proceeds.

12. **BAROT** served as a receiver and money launderer for the conspiracy. He coordinated with members of the conspiracy to receive the proceeds of the fraud scheme from the couriers who received the proceeds directly from the victims and laundered those proceeds.

13. **PATEL** served as a courier for the conspiracy. He coordinated with members of the conspiracy to receive the proceeds of the fraud scheme, confirmed the receipt of fraudulently obtained property, conveyed that property to other members of the conspiracy, and received payment for his role from members of the conspiracy.

14. **MANGUKIYA** served as a recruiter and a courier for the conspiracy. He recruited and attempted to recruit people in other parts of the country to serve as couriers for the conspiracy. He also coordinated with members of the conspiracy to receive the proceeds of the fraud scheme, confirmed the receipt of fraudulently obtained property, conveyed that property to other members of the conspiracy, and received payment for his role from members of the conspiracy.

**COUNT ONE**
**Conspiracy to Commit Wire Fraud**
**[18 U.S.C. § 1349]**

15. Paragraphs 1 through 14 of this Indictment are realleged and incorporated as though fully set forth herein.

16. Beginning in at least as early as on or about September 2022, the exact date being unknown to the Grand Jury, and continuing until on or about September 17, 2025, in the Western District of Texas and elsewhere, Defendants,

**BHAVESH KUMAR THAKKAR and**
**RAKESH BAROT,**

did knowingly and intentionally conspire and agree with one or more individuals to commit one or more offenses against the United States, namely:

a. *Wire Fraud, in violation of 18 U.S.C. § 1343*, that is, having devised and having intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions of material facts, namely, a scheme to acquire victim funds and property as described above, and the conspirators having acted with specific intent to defraud, for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
**Conspiracy to Commit Money Laundering**
**[18 U.S.C. § 1956]**

17. Paragraphs 1 through 14 of this Indictment are realleged and incorporated as though fully set forth herein.

18. Beginning in at least as early as on or about September 2022, the exact date being unknown to the Grand Jury, and continuing until on or about September 17, 2025, in the Western District of Texas and elsewhere, Defendants,

**BHAVESH KUMAR THAKKAR and**
**RAKESH BAROT,**

did knowingly combine, conspire, and agree with one or more individuals to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, namely:

a. To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Commit Fraud (18 U.S.C. § 1349) and Wire Fraud (18 U.S.C. § 1343) as described in this Indictment, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

**NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE**
**[*See* Fed. R. Crim. P.]**

**I.**
**Wire Fraud Violation and Forfeiture Statutes**
**[Title 18 U.S.C. § 1349, subject to forfeiture pursuant to Title 18 U.S.C. §§ 981(a)(1)(C) 982(a)(2)(A), as made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c).]**

As a result of the foregoing criminal violations set forth in Count One, the United States gives notice to Defendants of its intent to seek the forfeiture of property upon conviction pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) as made applicable to criminal forfeiture by Title 26 U.S.C. § 2461(c), which state:

> **18 U.S.C. § 981. Civil Forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

**II.**
**Money Laundering Violations and Forfeiture Statutes**
**[18 U.S.C. § 1956 subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1)]**

As a result of the foregoing criminal violations set forth in Count Two, the United States gives notice to the Defendants of its intent to seek the forfeiture of property upon conviction and as a part of sentence pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 982(a)(1), which states:

> **18 U.S.C. § 982. Criminal Forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957 . . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

**III.**

**Money Judgment**

**Money Judgment**: A sum of money equal to that represents the value of the proceeds obtained directly or indirectly from the violations charged in the counts set forth above, for which Defendants are liable.

## IV.
## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of defendant:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of the money judgment, as substitute assets, pursuant to 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL

[redacted]

FOREPERSON

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By: ______________________________
FOR: KEITH M. HENNEKE
ASSISTANT UNITED STATES ATTORNEY